UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tetravue, Inc., and Paul Banks<br><br>Plaintiffs,<br><br>v.<br><br>St. Paul Fire & Marine Insurance Company, a DOES 1 through 20, inclusive,<br><br>Defendant. | Case No.: 14-CV-2021 W (BLM)<br><br>**ORDER STAYING CASE PENDING THE OUTCOME OF PARALLEL STATE-COURT PROCEEDINGS** |

Pending before the Court are the parties' supplemental briefs on whether this Court should dismiss or stay this matter under the *Younger* or *Colorado River* doctrine. The Court decides the matter on the papers submitted and without oral argument. See Civ.L.R. 7.1 (d.1). For the reasons stated below, the Court will **STAY** this matter under the *Colorado River* doctrine pending the outcome of the parallel state-court proceedings.

//
//
//
//
//

## I. BACKGROUND

This removed insurance-coverage action represents Plaintiffs Tetravue, Inc., and Paul Banks' (collectively "Tetravue") second lawsuit seeking to enforce St. Paul's defense obligations for an earlier state-court action. In Tetravue's first lawsuit seeking declaratory relief against St. Paul, the California Court of Appeal reversed the Superior Court's order granting St. Paul's summary-judgment motion, and held that St. Paul had a duty to defend Tetravue in the underlying lawsuit. After the Court of Appeal remanded the case, the trial court denied Tetravue's motion to amend the complaint to add a claim for damages, and causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. Tetravue appealed the trial court's ruling on the motion to amend, which is currently pending.

Meanwhile, in order to avoid a statute of limitations problem, Tetravue filed a second state-court lawsuit against St. Paul for money damages. On August 28, 2014, St. Paul removed the case to this Court. Tetravue then filed a motion to remand on the basis that St. Paul failed to satisfy the amount-in-controversy requirement for diversity jurisdiction. This Court denied Tetravue's motion, but ordered the parties to submit additional briefing on the issue of *Younger* abstention. (*See April 8, 2015 Order* [Doc. 16].) In their supplemental brief, Tetravue argues for a remand or stay under either the *Younger* or *Colorado River* doctrine. St. Paul opposes.

## II. DISCUSSION

### A. *Younger* Abstention

Tetravue argues that the *Younger* abstention doctrine requires remand. *Younger* abstention is an exception to the general rule that a federal court must adjudicate controversies properly before it. Logan v. U.S. Bank Nat. Ass'n., 722 F.3d 1163, 1166–67 (9th Cir. 2013) (internal citations omitted). The doctrine reflects a "strong federal policy against federal–court interference with pending state judicial proceedings." Middlesex

County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982).  It requires a federal court to abstain from exercising jurisdiction over a civil case where:

> (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so....

San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose, 546 F.3d 1087, 1092 (9th Cir. 2008).

St. Paul contends that the present case fails to satisfy the second and fourth elements necessary to invoke *Younger* abstention.  For the following reasons, the Court agrees.

### 1. This case does not implicate an important state interest.

*Younger* abstention is inappropriate where the case before the federal court does not implicate an important state interest.  San Jose Silicon Valley Chamber of Commerce Political Action Comm., 546 F.3d at 1092.  Tetravue contends that this case implicates an important state interest for two reasons.  First, it argues that an important interest exists because this dispute concerns an insurance contract and "federal law reserves insurance law and regulation to the states."  (*Pls.' Mot.* [Doc. 17] 7:5–8.)  Logan v. U.S. Bank Nat. Ass'n., 722 F.3d 1163, is relevant in evaluating this argument.

In Logan, plaintiff sought *Younger* abstention on the basis that an unlawful-detainer action implicates important state interests.  In evaluating the argument, the Ninth Circuit explained that there are three types of civil proceedings in which the state might have a vital interest:

> noncriminal proceedings that "bear a close relationship to proceedings criminal in nature," "proceedings necessary for the vindication of important state policies," and "proceedings necessary for the functioning of the state judicial system." [Citation omitted.]  The first two categories implicate the state's executive interest and encompass cases in which the state or an agent of the state is a party "in an enforcement posture." [Citation omitted.]  The third category encompasses cases—including those between private parties— where the operation of the state judicial system is itself at issue.

Id. at 1167–68.  Because the unlawful-detainer action did not fall into any of the three categories, the court found abstention was not appropriate.

Similarly, this insurance coverage dispute does not fall into any of the three categories identified in Logan.  Since neither the state nor its agent is a party, the second *Younger* element would only be met if the operation of the state judicial system was itself at issue.  But Tetravue fails to explain how the operation of the state's judicial system is implicated by the fact that state insurance law governs this case.  See Logan, 722 F.3d at 1167 (stating that an important state interest for purposes of *Younger* is not present "simply because a suit implicates a state law, even one involving a traditional state concern").  Accordingly, Tetravue's argument based on the state's interest in insurance law and regulation is unavailing.

Tetravue next seeks to satisfy the second element by arguing that California has an important interest in "enforcing the orders and judgments of [its] courts."  Specifically, relying on Pennzoil Co. v. Texaco Inc., 481 U.S. 1 (1987), Tetravue contends the State has an important interest in determining the procedure by which a party can enforce a declaratory judgment and in determining the preclusive effect of such a judgment.  (*Pls.' Reply* [Doc. 20] 4:3–6:6).

Pennzoil established that a state has an important interest in "enforcing the orders and judgments of [its] courts."  Id. at 13.  However, the Court did not hold that this interest is implicated merely because a case presents the state with an opportunity to further develop its common law regarding the proper manner of enforcement or the preclusive effect of a specific type of judgment.  Rather, Pennzoil simply concluded that this interest is implicated where a federal court obstructs the state court's ability to enforce its orders and judgments.  Id. at 13–14.  In this vein, the present case is meaningfully distinguishable from Pennzoil.  Unlike the federal injunction against the enforcement of a state-court judgment at issue in Pennzoil, a determination by this Court regarding the proper amount of damages to award for St. Paul's breach of its duty to defend would not obstruct the state court's judgment that St. Paul, in fact, had a duty to defend.

Because Tetravue has failed to articulate how this case presents any interest that puts the operation of the judicial system at issue, the Court finds this case does not implicate any important state interest.

### 2. Any action by this Court would not actually or effectively enjoin the state-court proceeding.

*Younger* is not applicable unless the federal court's action would actually or effectively enjoin a state-court proceeding. San Jose Silicon Valley Chamber of Commerce Political Action Comm., 546 F.3d at 1092. The possibility of conflicting judgments or of one court's judgment operating as *res judicata* upon the collateral proceeding is, without more, insufficient to satisfy this *Younger* element. AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1151–52 (9th Cir. 2007).

Tetravue argues that this element is satisfied because, if the Court of Appeal reverses the Superior Court's denial of Tetravue's motion to amend its complaint, this Court and the Superior Court would confront the same exact issues. Both courts would be deciding whether Tetravue is entitled to damages stemming from St. Paul's failure to defend against General Atomics' cross complaint and, if so, the proper amount of damages to award. If this Court were to reach a decision on these issues first, the principles of *res judicata* would likely operate as a constraint on the Superior Court's ability to decide them. However, *res judicata* appears to be the extent to which any action in this case could interfere with the state-court proceeding. The two proceedings would otherwise be free to progress simultaneously. Because the possibility that one court's judgment could operate as *res judicata* upon the other proceeding is, without more, insufficient, the Court finds this argument unpersuasive.

### B. *Colorado River* abstention

Tetravue also argues that the Court should remand or stay under the *Colorado River* doctrine. Unlike traditional abstention doctrines, which are primarily based on principles of federalism and considerations of proper constitutional adjudication, *Colorado River*

"rest[s] on considerations of (w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 817 (1976) (internal citations and quotation marks omitted).  Thus, the *Colorado River* doctrine can justify a stay or dismissal in situations of contemporaneous exercise of concurrent jurisdiction by state and federal courts even though traditional abstention principles do not apply. Smith v. Central Ariz. Water Conservation Dist., 418 F.3d 1032–33 (9th Cir. 2005).  However, "the [Supreme] Court has carefully limited *Colorado River*, emphasizing that courts may refrain from deciding an action for damages only in 'exceptional' cases, and only the 'clearest of justifications' support dismissal." R.R. St. & Co. Inc. v. Transp. Ins. Co., 656 F.3d 966, 978 (9th Cir. 2011) (quoting Colorado River Water Conservation Dist., 424 U.S. at 805).

   To determine whether a stay or dismissal under *Colorado River* is appropriate, "the district court must carefully consider 'both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise.'" R.R. St. & Co. Inc., 656 F.3d at 978 (quoting Colorado River Water Conservation Dist., 424 U.S. at 818).  The factors most commonly considered in the Ninth Circuit are:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

R.R. St. & Co. Inc., 656 F.3d at 978–79 (citing Holder v. Holder, 303 F.3d 854, 870 (9th Cir. 2002)).  "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a mechanical checklist." American Intern. Underwriters (Philippines), Inc. v. Cont'l Ins. Co., 843 F.2d 1253, 1257 (9th Cir. 1988).  This balancing process is "heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 16 (1983).  Thus, "[a]ny doubt as to whether a factor exists should be resolved against a stay, not in favor of one." Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1369 (9th Cir. 1990).

Both parties agree that the first two factors are neutral because "the dispute does not involve a specific piece of property, and both the federal and state forums are located in [the same city]." R.R. St. & Co. Inc., 656 F.3d at 979. However, disagreement exists on the remaining factors.

### 1. Piecemeal Litigation

The paramount consideration in Colorado River was "the danger of piecemeal litigation." Moses H. Cone, 460 U.S. at 19. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." American Intern. Underwriters (Philippines), Inc., 843 F.2d at 1258. St. Paul argues that there is no risk of piecemeal litigation here because the state-court proceeding is currently stayed pending appeal and, if the Court of Appeal affirms, then the state court will not consider any of the issues presented to this Court. (*Def's Opp'n* [Doc. 19] 9:21–26.)

This argument ignores the very real possibility that the Court of Appeal may reverse the Superior Court's denial of Tetravue's motion to amend.[1] If that happens, both this Court and the state court would expend scarce judicial resources confronting the same exact issues. Both would be deciding whether Tetravue is entitled to damages stemming from St. Paul's failure to defend against General Atomics' cross complaint and, if so, the proper amount of damages to award. Accordingly, the Court finds this factor weighs in favor of a stay.

### 2. Order of Jurisdiction

The fourth *Colorado River* factor considers (1) which court obtained jurisdiction first in time and (2) which court has made the most progress on the issues presented. Moses H. Cone, 460 U.S. at 21. Both considerations favor Tetravue.

This Court did not obtain jurisdiction until St. Paul removed the case on August 28, 2014. In contrast, the state court obtained jurisdiction over the issues in this case several

---

[1] See section II.B.6 below for an analysis of whether the Court of Appeal will grant Tetravue's appeal.

years earlier when Tetravue filed the declaratory action in February 2011. The state court has also made substantially more progress. This action is one for damages stemming from St. Paul's breach of its duty to defend Tetravue in the underlying litigation. It is true, as St. Paul argues, that the state court does not appear to have made much if any progress on the specific issue of damages. But neither has this Court. Indeed, the only progress this court has made is a determination that the prerequisites for diversity jurisdiction exist. (See *April 17, 2015 Order* [Doc. 16].) By contrast, the state court has already made a careful examination of the contractual relationship between the parties and concluded that St. Paul had a duty to defend Tetravue against General Atomics' cross complaint. Additionally, the state court has considered this issue at both the Superior Court level and at the Court of Appeal. Thus, though neither court has yet addressed the specific issue of damages, the state court has already fully litigated the foundational issue of whether a duty to defend existed. Because the issue of whether a duty existed is inextricably intertwined with the issue of Tetravue's damages for St. Paul's breach, the Court finds that this factor weighs in favor of a stay.

### 3. Source of Law

This action is for breach of contract and bad faith. There appears to be no dispute between the parties that such actions turn entirely on state law. However, "the presence of state-law issues may weigh in favor of [not exercising jurisdiction]' only 'in some rare circumstances.'" Madonna, 914 F.2d at 1370 (quoting Moses H. Cone, 460 U.S. at 26.) Furthermore, "routine issues of state law—misrepresentation, breach of fiduciary duty, and breach of contract" do not present such "rare circumstances." Id. Because Tetravue's breach of contract and bad faith actions appear to fall squarely under the category of "routine issues of state law" as defined by Madonna, the Court finds this factor to be neutral.

//
//

### 4. Adequacy of the State Court to Protect the Rights of the Federal Litigants

In the Ninth Circuit, this factor does not seem to operate "against the exercise of federal jurisdiction, only in favor of it." Madonna, 914 F.2d at 1370. Thus, the fact that there are no federal issues presented by this litigation and the state court appears fully capable of protecting the rights of the federal litigants is unhelpful. Accordingly, the Court finds this factor to be neutral.

### 5. Forum Shopping

Forum shopping refers to "[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard." R.R. St. & Co., 656 F.3d at 981 (quoting Black's Law Dictionary 726 (9th ed. 2009)). "To avoid forum shopping, courts may consider 'the vexatious or reactive nature of either the federal or the state litigation.'" Id. (quoting Moses H. Cone, 460 U.S. at 17 n.20.) Additionally, the Ninth Circuit has "affirmed a *Colorado River* stay or dismissal when it was readily apparent that the federal plaintiff was engaged in forum shopping." Id.

Each party argues that the other is engaged in forum shopping. St. Paul seems to argue that Tetravue is forum shopping simply because it was content to litigate the case in state court and now opposes removal. (*Def.'s Opp'n* 11:9–21.) Tetravue argues that St. Paul is forum shopping because St. Paul did not seek removal until suffering an adverse ruling in state court on the issue of whether it had a duty to defend against General Atomics' cross complaint. (*Pls.' Mot.* 12:1–7.)

St. Paul's argument that Tetravue's motion to remand demonstrates "reactive" conduct ignores the fact that the lawsuit was initially filed in state court, where the original action is pending. Additionally, as Tetravue points out, the lawsuit was filed there because the first "state case has progressed through the state court for over four years, and is governed by state law." (*Pls.' Reply*, 9:8-11.) Accordingly, Tetravue's filing of this lawsuit in state court does not demonstrate forum shopping. Nor does the Court find any merit to St. Paul's contention that Tetravue's exercise of its appellate rights suggests forum

shopping. This is especially true given Tetravue's appeal of the trial court's initial ruling, which demonstrates its consistent desire to exercise those rights.

As for St. Paul, it fails to explain its inconsistency in allowing Tetravue's declaratory-relief lawsuit to proceed in state court, but now seeking to pursue the damages lawsuit in federal court. The most reasonable explanation seems to be that after suffering an adverse ruling by the state court on the issue of whether it had a duty to defend, St. Paul revisited its thinking on which venue would be most favorable to its case. Such reactive posturing constitutes textbook forum shopping.

For the above reasons, the Court finds this factor weighs heavily in favor of a stay.

### 6. Likelihood that the State-Court Proceeding will Resolve all Issues

A stay or dismissal under *Colorado River* is inappropriate where there exists substantial doubt as to whether the state proceedings will resolve the issues presented to the federal court. R.R. St. & Co., 656 F.3d at 982. There is no dispute that this case and the state-court proceeding currently on appeal involve the exact same parties and issues. Thus, if the Court of Appeal reverses the Superior Court's denial of Tetravue's motion for leave to amend its complaint, then the state-court case will involve the identical issues and parties present in this case. In that event, the state-court proceeding would resolve all issues between the parties in this case.

However, St. Paul argues that the Court of Appeal will "almost certainly affirm." Specifically, St. Paul quotes Hampton v. Superior Court, 38 Cal. 2d 652, 656 (1952), and argues that the Superior Court had no choice but to deny leave to amend because a trial court cannot "reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case" where "an appellate court reverses the judgment below and directs the entry of judgment in favor of appellant." (*Def.'s Opp'n* 11:22–12:10). This argument appears to rest on a misreading of Hampton.

It is true that, under Hampton, the Superior Court was bound to enter judgment exactly as directed by the Court of Appeal and could not allow any party to seek to amend or supplement the complaint in a manner inconsistent with the directed judgment.

However, <u>Hampton</u> does not appear to prohibit the Superior Court from allowing Tetravue to amend its complaint in a manner that is consistent with the judgment directed by the Court of Appeals.  Permitting Tetravue to add a claim for damages stemming from St. Paul's breach of its duty to defend against General Atomics' cross complaint is entirely consistent with the entry of a judgment that this duty to defend existed.  Therefore, it is unclear whether <u>Hamption</u> required the Superior Court to deny Tetravue's motion to amend.

Furthermore, the only reason offered by the Superior Court for denying Tetravue's motion to amend was the conclusion that the "[Superior] Court lacks the authority to expand the scope of this litigation when the Court of Appeal has specifically directed that judgment be entered." (*Def.'s Opp'n* Exhibit 1.)  Because this conclusion appears based on its reading of <u>Hampton</u>, it seems possible that the Court of Appeal could reverse the denial of Tetravue's motion to amend.  Accordingly, the Court finds the state-court proceeding may resolve all issues presented by this case.

### 7. <u>Balance of Factors</u>

On balance, the Court finds that this is the type of "exceptional case" that presents the "clearest of justifications" necessary to warrant a stay under *Colorado River*.  To begin, "[n]one of the factors that would preclude a *Colorado River* stay or dismissal—issues of federal law, inadequacy of the state court forum, or a possibility that the state court proceeding will not resolve the dispute—are concerns in this case." <u>R.R. St. & Co.</u>, 656 F.3d at 983.  In contrast, the state court has already made considerable progress in this litigation and if the Court of Appeal reverses the Superior Court, the state case will resolve all issues presented.  Thus, if the case is not stayed, there exists a significant possibility that one court will waste scarce judicial resources considering the same exact issues as the other court.  Further, the only potential beneficiary of this duplicative effort would be St. Paul, who, after receiving an adverse ruling from the state court, seems to have reassessed its thinking on which venue would be most favorable to its case.  For purposes of *Colorado*

*River*, the importance of efficiently allocating judicial resources trumps St. Paul's desire to secure what it may perceive as a potentially more favorable forum.

### III.  CONCLUSION

For the reasons stated above, the Court **STAYS** this case pending resolution of Tetravue's state-court appeal and **ORDERS** as follows:

- Tetravue shall provide a status report within 90 days regarding the appeal or shall notify the Court within 5 days of the resolution of the appeal, whichever occurs first.

**IT IS SO ORDERED.**

Dated:  November 3, 2015

_____
Hon. Thomas J. Whelan
United States District Judge