UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TETRAVUE, INC. and PAUL BANKS,<br><br>                          Plaintiffs,<br><br>v.<br><br>ST. PAUL FIRE & MARINE INSURANCE COMPANY, et al.,<br><br>                          Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No.: 14cv2021-W (BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL SUPPLEMENTAL DISCOVERY RESPONSES AND DOCUMENT PRODUCTION**<br><br>**[ECF No. 55]** |

Currently before the Court is Defendant's February 6, 2017 "Motion to Compel Supplemental Discovery Responses and Document Production from Plaintiffs" [ECF No. 55-1 ("Mot.")] and Plaintiffs' February 13, 2017 opposition to the motion [ECF No. 60 ("Oppo.")]. Having considered the briefing submitted by the parties and having reviewed all of the supporting exhibits, the Court **GRANTS IN PART AND DENIES IN PART** the motion.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs TetraVue and TetraVue's CEO Paul Banks brought this suit seeking damages from their insurance company, Defendant St. Paul Fire and Marine Insurance Co. ("St. Paul"), arising from St. Paul's alleged breach of duty to defend Plaintiffs against a lawsuit brought by a third party.  See ECF No. 1 at 9.  In 2008, Plaintiff Paul Banks left his former employer, General Atomics ("GA"), and founded TetraVue Inc.  Id. at 11.  In 2009, Mr. Banks sued GA for breach of contract and fraud, and GA cross-complained against TetraVue and Mr. Banks alleging that they had improperly used GA's trade secrets and non-trade secret confidential information to further TetraVue's business and solicit customers in competition with GA.  Id.  On January 6, 2011, Plaintiffs tendered to St. Paul the defense of the amended cross-complaint, and on January 25, 2011, St. Paul denied coverage and defense of Plaintiffs.  Id.  Plaintiffs defended the amended cross-complaint using their own resources, and the jury rendered a verdict for Mr. Banks on his complaint against GA, and for TetraVue and Mr. Banks against GA on the amended cross-complaint.  Id. at 12-13.

On February 24, 2011, Plaintiffs filed an action for declaratory relief in the San Diego Superior Court against Defendant St. Paul, and the trial court granted summary judgment in favor of Defendant.  Id. at 13; see also ECF No. 22 at 2.  On July 19, 2013, the California Court of Appeal reversed holding that Defendant had a duty to defend Plaintiffs in the underlying action against GA.  ECF No. 1 at 13.  Defendant reimbursed Plaintiffs for their past defense costs, and counterclaimed alleging that it was entitled to reimbursement of all or most of the defense costs it had paid.  Id.  On June 13, 2014, Plaintiffs filed the instant action in the San Diego County Superior Court alleging breach of the duty to defend, breach of contract, and breach of

the implied covenant good faith and fair dealing.  Id. at 9-15.  On August 27, 2014, St. Paul answered, and on August 28, 2014, removed the action to this Court.  Id. at 1-6, 22-27.

On November 16, 2016, Defendant filed a motion to compel seeking, *inter alia*, to compel Plaintiffs to produce all non-privileged documents responsive to its Requests for Production ("RFP") Nos. 1-15[1] and to provide supplemental responses to Interrogatory Nos. 3-14.[2]  ECF No. 43-1 at 4-6, 8.  On December 2, 2016, the Court granted in part and denied in part Defendant's motion, and required Plaintiffs to produce all responsive documents, except for documents from the underlying litigation that did not relate to GA's cross-claims against Plaintiffs, and to provide supplemental responses to Defendant's interrogatories.  ECF No. 52 at 10-17.

Plaintiffs subsequently served supplemental written responses and produced additional documents.  See ECF No. 55-2, Declaration of Jared K. LeBeau ("LeBeau Decl.") at 2-3; ECF No. 60-1, Declaration of Ty Tosdal ("Tosdal Decl.") at 2.  Specifically, on December 16, 2016,

---

[1] Defendant summarized the RFPs as follows:

> (i) any documents plaintiffs' contended supported their claims against [Defendant], (ii) documents showing what issues were actually litigated by GA against plaintiffs . . . , and (iii) documents showing whether and to what extent three particular documents (the White Paper, the Short Range Plan, and the Proof of Principal plan) were litigated in the Underlying Litigation.

ECF No. 43-1 at 4.

[2] Defendant summarized the interrogatories as seeking:

> (i) to list any documents in which GA set forth or explained the basis for its claims against plaintiffs in the Underlying Litigation, and (ii) to answer certain questions about the documents that the Court of Appeal had identified as particularly relevant– i.e., the White Paper, the Short Range Presentation, and the Proof of Principle plan.

Id. at 4-5.

Plaintiff produced GA's "advertising materials, correspondence between counsel, discovery requests and responses, deposition transcripts of Paul Banks, motions in limine, trial briefs and admitted trial exhibits." Tosdal Decl. at 2; see also LeBeau Decl. On January 23 and January 26, 2017, Plaintiffs produced additional documents from the underlying case, including nine responsive deposition transcripts, the exhibits from Mr. Bank's deposition, and 127 admitted trial exhibits. Id. Defendant claimed that Plaintiffs' supplemental production and interrogatory responses were deficient and filed the instant motion to compel. See Mot.

## **LEGAL STANDARD**

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Id. at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." Id. at 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

An interrogatory may relate to any matter that may be inquired under Rule 26(b). Fed. R. Civ. P. 33(a)(2). "The grounds for objecting to an interrogatory must be stated with specificity," and any interrogatory not objected to must be answered fully in writing under oath. Fed. R. Civ. P. 33(b)(4).

Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The party seeking to compel discovery has the burden of establishing that its request satisfies the relevance requirement of Rule 26. Soto, 162 F.R.D. at 610. Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of "clarifying, explaining, and supporting its objections." DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

## **DISCUSSION**

Defendant moves the Court to compel Plaintiffs to produce the requested documents in a usable format and supplement their discovery responses. Mot. at 11-20. Specifically, Defendant asks the Court to compel Plaintiffs to

1. [w]ithdraw their meritless objections based on their claimed inability to obtain the defense file from their prior counsel, as well as withdraw their qualified responses that they will supplement all responses once that file has been obtained;

2. [p]rovide further and complete supplemental responses to [Defendant's] Requests for Production Nos. 1-15;

3. [p]rovide further and complete supplemental responses to [Defendant's] Interrogatories Nos. 3-14, including identifying the specific documents they were asked to identify; and

4. [r]eview their December 2016 supplemental production, remove any nonresponsive documents, and organize any responsive ones based on which requests for production they are responsive to.

Id. at 20-21.

Defendant asserts that the Court has previously ordered Plaintiffs to respond to the discovery at issue, that the documents in the possession of Mr. Greenstein, one of Plaintiffs' counsel in the underlying litigation, are in Plaintiffs' "control" for discovery purposes, that Plaintiffs' production does not comply with Fed. R. Civ. P. 34, and that Plaintiffs need to supplement their interrogatory responses. Id. at 11-20. In support, Defendant contends that Mr. Greenstein represented Plaintiffs in the underlying action and still represents them, and that any documents Mr. Greenstein obtained in connection with Plaintiffs' representation are in Plaintiffs' "control" and should be produced, if the documents are not privileged and are responsive to Defendant's RFPs. See id. at 11-13. Defendant further contends that Plaintiffs' production does not comply with the requirements of Fed. R. Civ. P. 34. Id. at 13-19. Defendant

claims that the production was a "data dump," that Plaintiffs did not provide any meaningful index to locate responsive documents and did not establish that they produced documents in the format maintained in the ordinary course of business, that Plaintiffs' production contains a significant number of non-responsive documents, and Plaintiffs are in a better position to identify responsive documents. Id. at 5, 16-20. Defendant also asks the Court to compel Plaintiffs to supplement their interrogatory responses claiming that Plaintiffs "generally referred" Defendant to documents/categories of documents without any explanation of where the documents could be found. Id. at 6, 19-20.

Plaintiffs assert in their opposition that they have complied with the Court's discovery order by producing responsive documents and serving supplemental interrogatory responses. Oppo. at 5-8. Plaintiffs argue that they do not have "possession or control" of the remaining documents in the possession of Mr. Greenstein and his firm TechMark because Mr. Greenstein is their former counsel who refused to "respond[] to the repeated demands for documents and provid[e] them to his former clients." Id. at 13-17. Plaintiffs also contend that the underlying case file was maintained in electronic format, which is subject to different discovery procedures than conventionally stored documents, and that they have produced electronically stored information ("ESI") in the format required by Fed. R. Civ. P. 34. Id. at 8-13. Finally, Plaintiffs allege that they already have served supplemental interrogatory responses identifying responsive documents, and argue that additional responses are not warranted. Id. at 17-18. Plaintiffs thus ask the Court to deny Defendant's motion to compel. Id. at 18.

### a. Custody and Control over the TechMark Documents

Defendant asserts that Plaintiffs did not produce responsive documents in custody of Mr. Greenstein ("the TechMark documents"), and argues that the requested documents are in

Plaintiffs' "control." Mot. at 11-13. Defendant claims that Mr. Greenstein still represents Plaintiffs, as evidenced by his deposition testimony, and that even if Mr. Greenstein ceased representing Plaintiffs, he would nevertheless be required to give the TechMark documents to Plaintiffs. Id. (citing Cal. R. Prof. Conduct 3-700(D) (requiring a terminated attorney to "promptly release" all "client papers and property" to the client). Plaintiffs respond that whether a party has the requisite possession or control depends not only on the legal relationship between the parties, but also on specific facts concerning "actual control." Oppo. at 14. Plaintiffs argue that Mr. Greenstein is their former counsel who has refused to "respond[] to the repeated demands for documents and provid[e] them to his former clients," and that, consequently, they lack actual control over the requested documents. Id. at 15-16.

Shortly after Defendant served its discovery requests in April and May, 2016, Plaintiffs requested responsive documents from their current and former attorneys, including Mr. Greenstein. Tosdal Decl. at 2. While other attorneys provided the requested documents, Mr. Greenstein initially declined to do so, alleging, *inter alia*, that the documents were protected by the work-product doctrine and attorney-client privilege, were subject to the protective order in the underlying case, and would be extremely time-consuming and expensive to review. Id. at 2-3. Mr. Tosdal provided Mr. Greenstein with a letter from GA authorizing the production of documents subject to the protective order in the underlying case, and Mr. Greenstein subsequently provided Plaintiffs with "thousands of pages of documents," which Plaintiffs reviewed, and then produced the responsive documents to Defendant. Id. at 3.

After the Court's discovery order, Plaintiffs served supplemental written responses and produced additional documents. See LeBeau Decl.; Tosdal Decl. Plaintiffs' supplemental responses to Defendant's interrogatories stated that "[d]iscovery and investigation are ongoing

and the request cannot be fully answered at this time, in part because Plaintiffs have not yet received the entire defense file for the cross-complaint from former counsel." See Tosdal Decl., Exh. 1. Further, Plaintiffs' supplemental responses to the vast majority of Defendant's RFPs at issue stated that "Plaintiffs will supplement this response with any additional responsive non-privileged documents when the entire file from the UNDERLYING ACTION is obtained." See id. On December 2, 2016, Plaintiffs served Mr. Greenstein and TechMark with subpoenas, seeking the production of the entire case file from the underlying case against GA. See Tosdal Decl. at 4; id., Exh. 3; Oppo. at 15; LeBeau Decl. at 5-6; id., Exhs. 6-9, 14-15. On December 16, 2016, Mr. Greenstein and TechMark served objections and did not produce additional documents. See Tosdal Decl. at 4; id.; Exh. 4; see also Oppo. at 15-16.

The Federal Rules of Civil Procedure provide that a party responding to document requests must do so based upon all items in "the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "Documents are deemed to be within the possession, custody or control of a party and subject to a request for production if the party has actual possession, custody or control or has the legal right to obtain the documents on demand." Ivy Hotel San Diego, LLC v. Houston Cas. Co., 2011 WL 4914941, at *9 (S.D. Cal. Oct. 17, 2011) (citing Tomlinson v. El Paso Corp., 245 F.R.D. 474, 476 (D. Col. 2007)). "Therefore, Rule 34(a) enables a party seeking discovery to require production of documents beyond the actual possession of the opposing party if such party has retained any right or ability to influence the person in whose possession the documents lie." Ivy Hotel San Diego, LLC, 2011 WL 4914941, at *9 (citing Tomlinson, 245 F.R.D. at 476-77). Documents in the possession of a party's current or former counsel are deemed to be within that party's "possession, custody or control" for purposes of discovery under Fed. R. Civ. P. 34. See Hill v. Asset Acceptance, LLC, 2014 WL

3014945, at *7 (S.D. Cal. July 3, 2014) (citing <u>Ivy Hotel San Diego, LLC</u>, 2011 WL 4914941, at *1-2, 9-10 and <u>Moreno v. Autozone, Inc.</u>, 2008 WL 906510, at *1 (N.D. Cal. Apr. 1, 2008)); <u>see also</u> <u>Montgomery v. Wal-Mart Stores, Inc.</u>, 2015 WL 11233385, at *2 (S.D. Cal. Sept. 18, 2015) ("[b]ecause a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control."). The party seeking production bears the burden of proving that the opposing party has such control. <u>U.S. v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO</u>, 870 F.2d 1450, 1452 (9th Cir. 1989).

At the time of the underlying action, one of Plaintiffs' trial attorneys, James Sarnecky, worked for Gavrilovich, Dood & Lindsey, LLP ("GDL"), which employed two attorneys, but no paralegals or litigation support staff, and the TechMark firm was brought into the underlying case "to assist with administration, paralegal and other attorney support, and maintaining [Plaintiffs' underlying litigation case] file." ECF No. 60-2, Declaration of James M. Sarnecky ("Sarnecky Decl.") at 2. "GDL attorneys focused on substantive trial preparation while the TechMark firm provided administrative and other case specific support." <u>Id.</u> at 2-3. TechMark presently "holds primary file from the underlying action" and Mr. Greenstein is the "primary keeper of the case litigation file from the underlying action." <u>Id.</u> GDL possesses a smaller subset of the main file maintained by TechMark, which overlaps with the main file, and consists of attorney-work product and attorney-client communications with adverse counsel, and other documents. <u>Id.</u> at 3. Mr. Sarnecky reviewed the GDL file and produced responsive non-privileged documents to Defendant. <u>See id.</u>

Further, Mr. Greenstein's September 16, 2016 deposition testimony establishes that he is still counsel of record for Plaintiffs in the underlying case, that the underlying case is still ongoing,

and that he does not know when his attorney-client relationship with Plaintiffs "may or may not end." LeBeau Decl. at 7; id., Exh. 19 at 114-15. Mr. Greenstein also testified that he "provided some advice and comments" to Plaintiffs about the instant litigation, and asserted the attorney-client privilege over discussions with Plaintiffs' counsel of record in this action and one of Plaintiffs' attorneys from the underlying litigation. Id., Exh. 19 at 116, 117-120.

In light of the above evidence, the Court concludes that Mr. Greenstein represented and still represents Plaintiffs in connection with the underlying action. See LeBeau Decl. at 7; id., Exh. 19 at 114-20; see also Sarnecky Decl. at 2-3. The evidence further shows that Mr. Greenstein is the "primary keeper of the case litigation file from the underlying action," and that Mr. Greenstein provided "thousands of pages of documents" to Plaintiffs upon request. Sarnecky Decl. at 2-3. Although Mr. Greenstein has not been fully cooperative in responding to Plaintiffs' requests for the TechMark documents, such lack of cooperation does not establish that Plaintiffs lack control over the documents.[3] The Court therefore finds that Plaintiffs have the required custody and control over the TechMark documents. See Ivy Hotel San Diego, LLC, 2011 WL 4914941, at *1-2, 9-10 (finding that defendant had custody and control over documents in the physical possession of defendant's former counsel in an insurance coverage action where

---

[3] Mr. Greenstein's and TechMark's objections to Plaintiffs' subpoenas suggest that one of their primary concerns associated with producing the TechMark documents was the cost to review the underlying litigation file for responsive, non-privileged documents, which Mr. Greenstein and TechMark stated should be covered by Plaintiffs. See Tosdal Decl., Exh. 4. Mr. Greenstein and TechMark did not move the Court to quash the subpoenas and did not present any declaration(s) or other evidence establishing the costs associated with the production of the documents at issue. Similarly, Plaintiffs did not move to enforce the subpoenas served on Mr. Greenstein and/or TechMark. See Docket. The Court is thus faced with a limited question in the instant motion–whether Plaintiffs have custody and control of the TechMark documents. They do. Plaintiffs are required to obtain the entire file, review it for privilege and relevance, and produce the relevant, responsive documents.

plaintiff sued defendant to recover legal fees and expenses incurred while defending a cross complaint in a different matter ("Krump action"), plaintiff requested documents regarding defendant's handling of plaintiff's claim in the Krump action, and defendant produced only the documents that were in its immediate possession); Hill, 2014 WL 3014945, at *7 ("if [a party's] current or former counsel has responsive documents, [that party] ha[s] possession, custody, or control of those documents for purposes of discovery.").

Plaintiffs represented in their discovery responses that they would supplement their responses with "additional responsive non-privileged documents when the entire file from the UNDERLYING ACTION is obtained." See Tosdal Decl., Exh. 1. As such, the Court **GRANTS** Defendant's motion to compel to the extent the TechMark documents contain additional responsive non-privileged documents that have not been produced. The Court thus **ORDERS** Plaintiffs to obtain and review the TechMark documents, and use that information to supplement their responses to Defendant's RFP Nos. 1-15 and Interrogatory Nos. 3-14 by **April 14, 2017**.

### b. Plaintiffs' Document Production

Defendant contends that Plaintiffs' supplemental production was a "data dump," which does not comply with the requirements of Fed. R. Civ. P. 34. See Mot. at 13-19. Defendant claims that one subcategory of the produced documents contains over 10,600 documents comprising almost 82,000 pages,[4] and Plaintiffs did not provide any "meaningful index" to locate

---

[4] Plaintiffs' supplemental production was broken into the following five categories:

1. *"Underlying Action Correspondence including Discovery Requests/Responses, Motions, Pleadings, Briefs, etc."—consisting of 10,696 documents that comprised a total of 81,720 pages of documents.*
2. *"Banks/TetraVue, Inc. Correspondence with St. Paul"—consisting of 5 documents that comprised a total of 22 pages.*

responsive documents in that category, and did not establish that they produced documents in the format maintained in the ordinary course of business. Id. at 5, 13-20. Defendant also claims that Plaintiffs' production contains a significant number of non-responsive documents, argues that Plaintiffs are in a better position to identify responsive documents, and asks the Court to order Plaintiffs to "further review and organize the production, remove non-responsive documents, and organize the remaining documents based on the categories of the specific RFP's they are responsive to." Id. at 17-19.

Plaintiffs respond that the underlying litigation case file was maintained in electronic format, which is subject to different discovery procedures than conventionally stored documents, that Defendant did not request a specific production format for ESI in this case, and that they have produced ESI in the format required by Fed. R. Civ. P. 34. Oppo. at 8-13. In support, Plaintiffs allege that they produced the ESI at issue in PDF format, which is "one of the recognized, well-established procedures in modern day litigation practice," and that the production was in a "reasonably usable form." Id. at 10. Plaintiffs further claim that the produced ESI was kept and produced in date order, that Defendant can organize, index and search the data at a low cost and with little effort, and that requiring Plaintiffs to organize the

---

3. "GA Advertising Material & Related Documents"—consisting of 15 documents that comprised 501 pages.
4. "Responsive Admitted Trial Exhibits—Banks v. GA"—consisting of 18 documents that comprised 627 pages.
5. "Banks Deposition Transcripts—Banks v. GA"—consisting of 3 documents (three volumes of Paul Banks's deposition without any corresponding exhibits) that comprised 176 pages.

LeBeau Decl. at 5; id., Exh. 5 (emphasis added).

requested documents according to Defendant's overbroad discovery requests would be disproportionate to the needs of the case. Id. at 11-13 (citing Fed. R. Civ. P. 26(b)(1)).

Rule 34(b)(2)(E) states that following:

> (E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E). "Rule 34(b)(2)(E)(i) governs hard copy documents, and (E)(ii) governs ESI, with no overlap between," and "[r]equesting parties are entitled to the guarantees of (E)(i) or (E)(ii), but not both." Anderson Living Trust v. WPX Energy Prod., LLC, 298 F.R.D. 514, 527 (D.N.M. 2014). "The drafters of 34(b)(2)(E) contemplated that parties requesting ESI would be able to organize it themselves—in their own way, to their own satisfactory level of thoroughness, and at their own expense—through the use of text-searching technologies like filtering, grouping, and ordering." Id. (citing Fed. R. Civ. P. 34 advisory committee's notes).

In support of their opposition, Plaintiffs provided a declaration from Mr. Sarnecky, one of their trial attorneys in the underlying case. See Sarnecky Decl. Mr. Sarnecky declares that the produced documents at issue consist "almost exclusively of emails and email attachments maintained as electronically stored information ('ESI')," because early in the underlying suit, the parties agreed to an email service agreement pursuant to which "[c]orrespondence, pleadings, motions, discovery, and discovery responses were served electronically by the parties via email."

See id. at 3-4. Mr. Sarnecky states that the underlying litigation case file was not a "paper file," but "an electronic file consisting primarily of ESI," and that "the responsive production and the format of the responsive production that [Defendant] now complains of is a production of ESI." Id. at 4. He further declares that "[d]ate order was the primary way [in which he] maintained these emails in their .pst folder," and that Defendant could sort the emails in other ways, if desired. Id.

Plaintiffs' declaration establishes that the underlying litigation case file consisted of ESI. See id. at 3-4. As such, the production at issue is governed by Fed. R. Civ. P. 34(b)(2)(ii), which provides that "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Id. Defendant did not request a specific production format for ESI in this case. See Oppo. at 10. Because Plaintiffs' evidence establishes that the ESI at issue was produced in PDF format in date order as it was stored in Microsoft Outlook by Plaintiffs' counsel in the underlying case, the production complies with Rule 34(b)(2)(ii) requirements. See Fed. R. Civ. P. 34(b)(2)(ii); Sarnecky Decl. at 4; see also Oppo. at 10-11. Defendant can search, filter, group, index, etc. the produced ESI, and already has started doing so. See LeBeau Decl. at 7-8.

Accordingly, the Court **FINDS** that Plaintiffs' production of ESI at issue is adequate and that no further production or labeling by Plaintiffs is required. See Anderson Living Trust, 298 F.R.D. at 518 (declining the requesting party's motion to compel the responding party to label documents, which had been scanned and produced electronically in PDF format, to correspond to the requesting party's individual discovery requests, where the producing party provided an affidavit describing the manner and form of their production). The Court therefore **DENIES**

Defendant's motion. However, Plaintiffs are required to supplement their document production to the extent the TechMark documents, which have not yet been produced, contain additional non-privileged responsive documents. If they have not already done so, Plaintiffs also are required to produce all of the exhibits for the depositions they previously produced. See Mot. at 8 (stating that Plaintiffs produced deposition transcripts without the referenced exhibits); LeBeau Decl. at 4-7 (same); Oppo. at 6 (containing Plaintiffs' statement that they produced trial exhibits and Mr. Banks' deposition exhibits but not the exhibits from other depositions); Tosdal Decl. at 2 (same).

### c. Plaintiffs' Interrogatory Responses

Defendant asks the Court to compel Plaintiffs to supplement their interrogatory responses claiming that Plaintiffs "generally referred" Defendant to documents/categories of documents without any explanation of where the documents could be found. Mot. at 6, 19-20. In support, Defendant alleges that Plaintiffs did not identify a single document by a specific bates range. Id. at 19. Defendant further claims that although Plaintiffs cited to pages of trial transcripts, they did not produce many of the corresponding exhibits, and that although Plaintiffs cited several paragraphs from GA's cross-complaint, such citations do "nothing to locate responsive documents among 82,000-page data dump." Id.

Plaintiffs assert in their opposition that they already have provided detailed interrogatory responses identifying documents responsive to Defendant's interrogatories, and referencing specific parts of the amended cross-complaint, documents produced in discovery, trial transcripts, exhibits, and other documents from the underlying case. Oppo. at 17-18. Plaintiffs further allege that Defendant's request for further review of all produced documents and further identification of documents in response to Defendant's overbroad interrogatives seeks discovery

which is not proportional to the needs of the case. Id. at 17 (citing Fed. R. Civ. P. 26(b)(1)). Plaintiffs thus claim that additional responses are not warranted and ask the Court to deny Defendant's motion to compel supplemental interrogatory responses. Id. at 18.

The Federal Rules of Civil Procedure authorize a party to respond to interrogatories by producing responsive business records and making those records available to the interrogating party under certain circumstances. See Fed. R. Civ. P. 33(d). As Rule 33(d) explains,

> [i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Id. An interrogatory response that references the entire document production does not specify records in sufficient detail. See Mancini v. Ins. Corp. of New York, 2009 WL 1765295, at *2 (S.D. Cal. June 18, 2009) (citation omitted). However, if the burden of deriving or ascertaining the answer will be substantially the same for either party, a response that identifies specific business records is sufficient. See Fed. R. Civ. P. 33(d); see also McKie v. Sears Prot. Co., 2011 WL 1670910, at *1 (D. Or. May 3, 2011) (stating that "'the rationale behind Rule 33(d) is to shift the burden of compiling the information and, accordingly, ascertaining the answer, from the producing party to the interrogating party. . . . Thus, where one of the parties must undertake the task of compiling the information and the records presented are not voluminous or indecipherable, the interrogating party should bear the responsibility of compiling the

information.") (quoting <u>Sadofsky v. Fiesta Prod., LLC</u>, 252 F.R.D. 143, 148 (E.D.N.Y. 2008));

<u>Probuilders Specialty Ins. Co. v. Valley Corp.</u>, 2012 WL 6045753, at *3 n.3 (N.D. Cal. Nov. 28, 2012) ("[W]hen a response to an interrogatory may be derived from business records and when the burden of deriving the answer from the records is substantially the same for both sides, the production of these records sufficiently answers the interrogatory.").

The Court has reviewed Plaintiffs' responses and finds they are adequate. As discussed above, Plaintiffs have produced the requested ESI from the underlying litigation case file currently in Plaintiffs' possession. Plaintiffs also have provided specific references to parts of the amended cross-complaint, trial transcripts, exhibits, and other requested documents from the underlying case.[5] <u>See</u> Tosdal Decl., Exh. 1 at 7-8, 14-24. Such production satisfies Fed. R.

---

[5] For example, in response to Defendant's Interrogatory Nos. 3-14, Plaintiffs identifying the following:

> The White Paper, Proof of Principle, and Short Range Presentations, all of which are described in the opinion of the Court of Appeal, contain essentially the same material – a description of 3D Imaging Technology, referred to variously in the documents as 3D Imaging Technology, SPI 3D, TDI, and/or TDLI. (See contents of White Paper, Proof of Principle Plan, Short Range Presentations) (See also, e.g. Trial Transcript 2031 (White Paper); 2124-6 (White Paper); 2033 (Short Range Presentations); 2131-2 (Short Range Presentations); 2141-2 (Short Range Presentations); 2200-1 (Short Range Presentations).
> GA's cross complaint alleges the taking and use by Banks and TetraVue of 3 D Imaging materials, which would include the White Paper, Proof of Principle, Short Range Presentations, and other material. (Amended Cross-Complaint including par. 1, 3, 4, 5, 6, 17, 44, 46, 47, 53, 54, 58, 75, 78, 79, 103, 104, 107, 108, 109, 111, 113, 114, 115, 116, 122, 123, 137, 142, 159, 160, 163, 167, 174, 175, 179, 182, 184, 185.)
> GA witnesses at trial testified that at various times and places GA communicated materials to actual or potential customers descriptive of its 3 D Imaging Technology, which were the same and/or contained the same material as the White Paper, Proof of Principle, and Short Range Presentations, which described the technology. One such document was the Technical Report. (E.g. Trial Transcript p. 1971, 1973, 2033, 2037-8, 2058-9, 2068, 2074, 2086-8, 2105, 2120-2123, 2129-30, 2240, 2344-5, 3273-4.).

Civ. P. 33(d). However, as discussed supra, Plaintiffs must supplement their interrogatory responses to the extent the TechMark documents, which have not yet been produced, contain additional non-privileged responsive information, and Plaintiffs must produce all of the exhibits used in the produced deposition transcripts.

**SUMMARY AND CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to compel supplemental discovery responses and documents from Plaintiffs. The Court **ORDERS** Plaintiffs to obtain and review the TechMark documents, and use that information to supplement their responses to Defendant's RFP Nos. 1-15 and Interrogatory Nos. 3-14 by **April 14, 2017**. Plaintiffs must produce the missing deposition exhibits, if any, by **March 29, 2017**.

IT IS SO ORDERED.

Dated: 3/15/2017

Hon. Barbara L. Major
United States Magistrate Judge

---

Tosdal Decl., Exh. 1 at 15-16. Plaintiffs also provided additional responses specific to individual interrogatories. See id. at 16-24.