# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

TETRAVUE INC., et al.,

                            Plaintiffs,

v.

ST. PAUL FIRE & MARINE
INSURANCE COMPANY,

                            Defendant.

And Related Counter-Claim.

Case No.:  14-CV-2021 W (BLM)

**ORDER:**
**(1) GRANTING PLAINTIFFS'**
**MOTIONS TO FILE DOCUMENT**
**UNDER SEAL [DOCS. 66, 77];**
**(2) GRANTING DEFEFNDANT'S**
**MOTION TO FILE DOCUMENTS**
**UDNER SEAL [DOC. 73];**
**(3) DENYNG PLAINTIFFS'**
**SUMMARY-JUDGMENT MOTION**
**[DOC. 65]; AND**
**(4) GRANTING IN PART AND**
**DENYING IN PART DEFENDANT'S**
**SUMMARY-JUDGMENT MOTION**
**[DOC. 70]**

      Pending before the Court are cross motions for summary judgment in this insurance-coverage dispute.  Plaintiffs Tetravue, Inc. and Paul Banks' motion seeks summary judgment on Defendant St. Paul Fire & Marine Insurance Company's counterclaim for reimbursement under <u>Buss v. Superior Court</u>, 16 Cal. 4th 35 (1997), and

1

declaratory relief. (*Pls' MSA Notice* [Doc. 65] 2:2–14.) Defendant's motion seeks summary adjudication regarding Plaintiffs' bad-faith claim, as well as various damage claims. (*Def's MSA Notice* [Doc. 70] 1:5–3:10.) In addition to these motions, the parties have each filed motions to seal certain documents.

The Court decides the matters on the papers submitted, and without oral argument. See CivLR 7.1.d. For the reasons discussed below, the Court **GRANTS** Plaintiffs' and Defendant's motions to file documents under seal [Docs. 66, 73, 77], **DENIES** Plaintiffs' summary-judgment motion [Doc. 65] and **GRANTS IN PART** and **DENIES IN PART** Defendant's summary-judgment motion [Doc. 70].

## I. BACKGROUND

This insurance-coverage dispute arises from an underlying lawsuit filed by Plaintiff Paul Banks against his former employer, General Atomics ("GA"), in 2009. (*Compl.* ¶ 12.[1]) In April 2010, GA filed a cross complaint against Banks and Plaintiff Tetravue, Inc., a company Banks founded after leaving GA. (*Id.* ¶¶ 12–13.) GA alleged Banks founded Tetravue "in order to improperly exploit the technology, business plans and strategy and other trade secret information [Banks] misappropriated from GA." (*GA Amend. Cross-Compl.* ¶ 1.[2]) GA also accused Banks and Tetravue of "other wrongful conduct... not involving GA's trade secrets, but, rather, with respect to their misuse of GA's confidential non-trade secret information or physical property." (*Id.*)

On January 6, 2011, Tetravue tendered its defense of GA's cross action to Defendant St. Paul, which had issued a commercial general liability policy to Tetravue, effective December 15, 2009. (*See Policy.*[3]) The policy provided coverage for, among

---

[1] The Complaint is attached to the Notice of Removal [Doc. 1] as Ex. A.

[2] GA's Amended Cross Complaint is attached to Plaintiffs' tender letter, which is attached to Sarnecky's declaration [Doc. 65-2] as Ex. 2, and Collins' declaration [Doc. 70-3] as Ex. 2.

2

other things, property damage and advertising injury, defined as "injury, other than bodily injury or personal injury, that's caused by an advertising injury offense." (*Id.* pp. 087–088.) An "advertising injury offense" included the "[u]nauthorized use of any advertising material, or any slogan or title, of others in your advertising." (*Id.* p. 088.) The policy also excluded coverage for intellectual-property claims, but consistent with the advertising-injury coverage, included an exception for,

> …advertising injury that results from the unauthorized use of any:
> - copyrighted advertising material;
> - trademarked slogan; or
> - trademarked title;
> of others in your advertising.

(*Id.* p. 103.) Included with Plaintiffs' tender letter was a copy of GA's Amended Cross-Complaint. (*See Sarnecky Decl.* Ex. 2; *Collins Decl.* Ex. 2.)

St. Paul assigned Plaintiffs' claim to technical specialist Bill Collins on January 10, 2011, who analyzed the Amended Cross-Complaint for coverage. (*Collins Decl.* ¶5.) Collins believed the allegations did not involve claims falling within the policy's coverage provisions, and also believed several exclusions applied, including the intellectual-property exclusion. (*Id.* ¶ 5.) After analyzing the cross-complaint on the morning of January 11, Collins called Neil Greenstein, the attorney who sent the tender letter on behalf of Plaintiffs, and explained his coverage analysis. (*Id.* ¶ 6.) Greenstein responded that he believed GA's conversion cause of action created a potential for coverage under the policy's property-damage-coverage provision. (*Id.*)

Collins considered Greenstein's contention about the property-damage provision, but concluded there was no potential coverage because the alleged conversion of GA's property (1) was intentional, not accidental, and (2) pre-dated the inception of the policy. (*Collins Decl.* ¶ 7.) On January 25, Collins sent a letter denying Plaintiffs' defense

---

[3] The Policy is attached to Collins' declaration as Ex. 1. Unless otherwise indicated, page citations are to the parties' exhibit-page numbers.

tender. (*Id.* Ex. 4.) The letter also invited Plaintiffs to provide any additional information "that may bear upon our coverage decision[.]" (*Id.* Ex. 4 at p. 241.)

On February 2, 2011, Greenstein requested that St. Paul reconsider its coverage position under the policy's property-damage and advertising-injury provisions. (*Collins Decl.* Ex. 5 at p. 245.) In reconsidering its position, Collins consulted with in-house counsel. (*Id.* ¶ 8.) On February 11, Collins e-mailed Greenstein and informed him that St. Paul's coverage position remained unchanged and that a formal response would follow. (*Id.*)

On February 24, 2011, Plaintiffs filed a lawsuit for declaratory relief against St. Paul in the San Diego Superior Court (the "Declaratory Relief Action"). (*See Dec. Relief Compl.*[4]) On February 25, 2011, Greenstein e-mailed Collins a copy of the Declaratory Relief Complaint. (*Collins Decl.* ¶ 9, Ex. 3 at p. 230.) From March 16 to March 23, Collins exchanged emails with Greenstein and Robert Vantress, another attorney for Plaintiffs, in which the parties staked-out their respective coverage positions. (*Id.* ¶¶ 10–13, Exs. 7–11.)

Eventually, Plaintiffs and St. Paul filed cross-motions for summary judgment in the Declaratory Relief Action. On September 9, 2011, the Superior Court granted St. Paul's motion and denied Plaintiffs' motion. (*See Brooks Decl.* Ex. 20.) The court found that an advertising-injury claim could not be fairly inferred from GA's Amended Cross-Complaint because the material that Banks allegedly stole and used was expressly alleged to be trade secret and confidential information. (*Id.* Ex. 20 at p. 26.) The court also found no coverage under the property-damage provision because the loss of use of the allegedly stolen property (1) occurred before the policy's inception, and (2) did not result from an "accident." (*Id.* Ex. 20 at pp. 26–27.)

---

[4] The Declaratory Relief Complaint is attached to Brooks' declaration [Doc. 70-2] as Ex. 19.

4

Plaintiffs appealed the order. On July 19, 2013, the Court of Appeal reversed, finding that an advertising-injury claim could be inferred from GA's Amended Cross-Complaint and thus a duty to defend existed. (*See Ct. App. Decision.*[5]) St. Paul did not appeal, and on August 16, 2013, it agreed to defend Plaintiffs. (*Collins Dec.* ¶ 14, Ex. 12.) Thereafter, St. Paul paid $2,379,443.67 to Plaintiffs or their attorneys. (*Id.* ¶¶ 15–16, Exs. 13–15.) These payments included interest and $88,500 for the value of Banks' time allegedly spent defending the cross-action. (*Id.* ¶¶ 17–18, Ex. 16.)

Meanwhile, Plaintiffs prevailed in both the cross-action, and the affirmative claims against GA, for which Plaintiffs were awarded $7,782,090.23. (*Sautter Decl.* [Doc. 70-4] ¶ 6.) This triggered a 12% "success fee" provision in Plaintiffs' fee agreement with their defense attorneys. (*Id.*) In June 2015, Plaintiffs requested St. Paul pay the "success fee" in the amount of $933,850.83 to their defense attorneys as an additional covered defense cost, which St. Paul agreed to do. (*Id.* Ex. 17; *Collins Decl.* Ex. 14.)

On June 13, 2014, Plaintiffs filed this lawsuit against St. Paul in the San Diego Superior Court, asserting causes of action for Breach of the Duty to Defend, and Breach of Contract and Implied Covenant. On August 28, 2014, St. Paul removed the case to this Court and eventually filed a counterclaim for <u>Buss</u> reimbursement and declaratory relief. The parties have now filed cross-motions for summary judgment.

## II.   MOTIONS TO SEAL EXHIBITS

Plaintiffs have filed a motion to file an unredacted version of GA's Amended Cross-Complaint under seal. The document is filed in support of Plaintiffs' summary-judgment motion. Plaintiffs contend the document contains information related to highly sensitive, confidential, and/or trade secret information belonging to General Atomics or the U.S. government, developed pursuant to government defense contracts, and was also

---

[5] The Court of Appeal's decision is attached to Brooks' declaration as Ex. 22, and Sarnecky's declaration as Ex. 6. Page citations are to the court's decision, not the parties' exhibit-page numbers.

sealed by the court in the underlying action.  (*Pls' Mt. to Seal in Support of MSJ* [Doc. 66] 2:13–18.) St. Paul has not opposed the motion.  Good cause appearing, the Court will grant Plaintiffs' motion to seal.

Plaintiffs have also filed a motion to seal various documents referenced in their opposition to St. Paul's summary-judgment motion.[6]  The documents include information related to highly sensitive, confidential, commercial information belonging to Tetravue and its investors, and have been designated Confidential under the Protective Order entered in this case.  (*Pls' Mt. to Seal in Support of. Opp'n* [Doc. 77] 2:12–16.)  In addition, Plaintiffs seek to seal other documents containing information related to highly sensitive, confidential, and/or trade secret information belonging to General Atomics or the U.S. government, developed pursuant to government defense contracts, and which were subject to a protective order or sealed by the court in the underlying action.  (*Id.* 2:16–22.) St. Paul has not opposed the motion.  Good cause appearing, the Court will grant Plaintiffs motion' to seal.

St. Paul has also filed a motion to seal a number of documents filed with their opposition to Plaintiffs' summary-judgment motion.  The documents and transcripts were designated as confidential/highly confidential in the underlying action, and/or were designated as confidential in this action because they contain information or testimony about sensitive, confidential, and/or trade secret information belonging to Tetravue, General Atomics, or the United States government, developed pursuant to defense contracts.  (*Def's Mt. to Seal* [Doc. 73] 7:3–8.)  Plaintiffs have not opposed the motion. Good cause appearing, the Court will grant St. Paul's request.

//

//

//

---

[6] The documents are also referenced in Plaintiffs' opposition to St. Paul's motion in limine.

### III. APPLICABLE LAW

#### A. Summary-judgment standard

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159–60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot avoid summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." In re Citric Acid Litig., 191 F.3d 1090, 1094 (9th Cir. 1999) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories,

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Ford Motor Credit Co. v. Daugherty</u>, 279 Fed. Appx. 500, 501 (9th Cir. 2008) (citing <u>Celotex</u>, 477 U.S. at 324). Additionally, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. <u>See Matsushita</u>, 475 U.S. at 587.

### B.    California insurance law

California law obligates an insurer to defend the insured when the facts alleged in the complaint create a potential for coverage. <u>Scottsdale Ins. Co. v. MV Transp.</u>, 36 Cal. 4th 643, 654 (2005). However, in evaluating the duty to defend, the insurer may also consider facts outside those alleged in the complaint. <u>Id</u>. "If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage." <u>Horace Mann Ins. Co. v. Barbara B.</u>, 4 Cal. 4th 1076, 1081 (1993). Thus, [i]n a declaratory relief action to determine the duty to defend, 'the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." <u>State Farm v. Superior Court</u>, 164 Cal. App. 4th 317, 323 (2008 (citing <u>Montrose Chemical Corp. v. Superior Court</u>, 6 Cal. 4th 287, 300 (1993)).

Bad faith occurs where the insurer withholds insurance benefits unreasonably and without proper cause. <u>Rappaport-Scott v. Interinsurance Exch. Of the Automobile Club</u>, 146 Cal. App. 4th 831, 837 (2007). Absent unreasonableness, the insurer's failure to defend gives rise only to contract damages:

> A breach of the duty to defend in itself constitutes only a breach of contract, but it may also violate the covenant of good faith and fair dealing where it involves unreasonable conduct or an action taken without proper cause. On the other hand, if the insurer's refusal to defend is reasonable, no liability will result.

Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc., 78 Cal. App. 4th 847, 881 (2000).

In Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713 (2007), the California Supreme Court explained that bad faith does not lie with "an honest mistake, bad judgment or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." Id. at 726 (quoting Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co., 90 Cal. App. 4th 335, 346 (2001)). Thus, bad faith may lie where a claim is denied "on a basis unfounded in the facts known to the insurer, or contradicted by those facts" or where the insurer ignores evidence that supports the insured's claim, and just focuses on facts that justify denial. Id. at 722.

## IV. DISCUSSION - DEFENDANT'S MOTION

### A. The Bad-Faith Claim

St. Paul seeks summary adjudication of Plaintiffs' bad-faith cause of action. Resolution of this issue turns on whether St. Paul's position that GA's Amended Cross Complaint did not allege a potential advertising-injury claim was unreasonable. For the reasons that follow, the Court finds the undisputed facts establish that St. Paul's position was not unreasonable.

The policy obligated St. Paul to "pay amounts" that Plaintiffs were "obligated to pay as damages for covered advertising injury that:"

- results from the advertising of your products, your work, or your completed work; and
- is caused by an advertising injury offense committed while this agreement is in effect.

(*Policy* p. 087.) The policy defined an "advertising injury" as an "injury, other than bodily injury or personal injury, that's caused by an advertising injury offense." (*Id.* p.

088.) Relevant to this case, an "advertising injury offense" included the "[u]nauthorized use of any advertising material, or any slogan or title, of *others* in your advertising." (*Id.*, italics added.) "[A]dvertising" meant "attracting the attention of others by any means for the purpose of" either "seeking customers or supporters" or "increasing sales or business," and "advertising material" meant "any covered material that: [¶] is subject to copyright law; and [¶] others use and intend to attract attention to their advertising." (*Id.*)

Based on these provisions, in order for there to be a potential for coverage under the advertising-injury-liability provision, GA's Amended Cross-Complaint must allege or include facts from which it may be inferred that:

    (1) Plaintiffs took material that GA *itself* used and intended to attract the attention of others by any means for the purpose of seeking customers or supporters or for increasing its sales or business;
    (2) the material in question is subject to copyright law; and
    (3) an accusation by GA that Plaintiffs used or were using that material to attract the attention of others for the purpose of seeking customers or supporters, or for the purpose of increasing sales or business.

(*Ct. App. Decision* p. 12, emphasis in original.)

In its motion, St. Paul does not dispute that the Amended Cross-Complaint's allegations satisfied the second and third elements. Instead, St. Paul contends it reasonably believed there were no allegations satisfying the first element because the cross-action had nothing "to do with GA's own advertising materials." (*Def's P&A* [Doc. 70-1] 20:5–7.) The undisputed fact support St. Paul's position.

To begin with, as Plaintiffs acknowledge, there is no dispute that GA's Amended Cross-Complaint was long and complex, consisting of "187 charging paragraphs," and involving "high level technology." (*Pls' Opp'n* [Doc. 76] 3:11–16.) Also undisputed is that nowhere in the long and complex cross complaint does GA explicitly allege Plaintiffs took material that GA *itself* used in advertising or to attract the attention of others for the purpose of seeking customers or supporters or for increasing its sales or business. (*See GA Amend. Cross-Compl; Def's P&A* 20:5–7.) Indeed, the California

Court of Appeal acknowledged "the absence of express allegations in the cross-complaint that General Atomics used the relevant materials to 'attract the attention of others'…." (*Ct. App. Decision* p. 21.)  In short, these allegations indicate that a certain degree of difficulty existed in determining the cross-action involved GA's advertising material.

Not only did the Amended Cross-Complaint omit an allegation that the materials Banks' took involved GA advertising material, but the parties' communications indicate they were unaware of allegations that created such an inference.  Between January 11, 2011 and March 23, 2011, there were numerous emails exchanged between Plaintiffs' attorneys and St. Paul.  (*Collins Decl.* ¶¶ 6–13.)  At no time during these communications did Plaintiffs' attorneys point to any allegations from which it could be inferred that the material Banks took was used by GA in its advertising, to attract the attention of others outside GA, or to increase its business.  (*Id.* ¶ 6, Exs. 3, 5, 8, 11.)  Particularly significant are communications between Collins and Vantress between March 18 and March 23, when the parties began to focus attention on the advertising-injury provision.  On March 18, Collins specifically informed Vantress that St. Paul did not believe the lawsuit involved the unauthorized use of GA's advertising material:

> Nothing in the complaint alleges a covered advertising injury arising from an advertising injury offense (the elements of which are explained in the plain language of the policy also cited in my letter).  The Cross-Complaint alleges the misappropriation of trade secrets and breach of confidentiality agreements, *not the unauthorized use of General Atomics "advertising material"*.

(*Collins Dec.* ¶ 11, Ex. 9 at 260, emphasis added.)  On March 22, Collins followed up by requesting from Plaintiffs,

> [a]ll documents showing that General Atomics seeks damages for covered "advertising injury" to include *any materials showing that GA pursues claims for damages resulting from Tetravue's unauthorized use of General Atomic's "advertising material" instead of ideas and/or trade secrets.*  This would include any documents demonstrating that unauthorized injury-causing us occurred (or allegedly occurred) in Tetravue's own "advertising"

of its "products", its "work" or "completed work" during the policy period(s).

(*Id.* ¶ 12, Ex. 10 at 262, emphasis added.) On March 23, Vantress responded by accusing Collins of "mak[ing] the same mistakes we wrote to you about before" and having "almost a complete lack of understanding of both the allegations in the Cross-complaint as well as your duties under the law." (*Id.* Ex. 11 at p. 264.) Absent, however, was any reference to allegations suggesting the cross-action involved GA's "advertising material." It is reasonable to infer that Vantress's failure to do so was because similar to Collins and St. Paul, Plaintiffs were unaware of any allegations supporting such an inference.

Similarly, Plaintiffs' Declaratory Relief Complaint also indicates that Plaintiffs were unaware of allegations supporting an inference that GA used the subject material in its advertising. Although Plaintiffs explicitly alleged that GA's Amended Cross-Complaint "makes numerous references to the advertising activities of the *insured*" (*Dec. Relief Compl.* ¶ 16, emphasis added), the Declaratory Relief Complaint did not allege the cross-action involved GA's advertising material or activities (*id.*). The absence of any such allegation in Plaintiffs' pleading also supports the inference that Plaintiffs were unaware of any such factual allegations in GA's Amended Cross-Complaint.

Similarly, there is also no dispute that in the Declaratory Relief Action, the Superior Court granted St. Paul's summary-judgment motion, agreeing with St. Paul's interpretation of GA's Amended Cross-Complaint. Specifically, the court found that while GA was alleging *Plaintiffs*

> may be seeking customers or increasing sales with property taken from GA, the *property taken from GA was not advertising material* because the allegations are that the property was trade secret or confidential information. As such, *it is not used by GA* to attract attention in seeking customers or increasing sales so the Advertising Injury coverage does not apply.

(*Brooks Decl.* Ex. 20 at p. 26, emphasis added.) Although the Superior Court's decision is not "presumptive evidence" of a lack of bad faith, the court's objective assessment is further evidence that St. Paul's position was, at best, reasonable or, at worst, an honest

12

mistake or bad judgment, neither of which are sufficient to constitute bad faith.  <u>See</u> <u>Wilson</u>, 45 Cal.4th at 722.

Nor does the Court of Appeal's decision demonstrate St. Paul acted in bad faith. Because the Amended Cross-Complaint did not explicitly allege Banks took GA's advertising material, the court's finding was based on factual inferences, drawn from a relatively small number of factual allegations, buried in the "187 charging paragraphs" discussing "high level technology." (*Ct. App. Decision* p. 18.[7])  Moreover, unlike Collins, by the time the Court of Appeal began its coverage analysis, the parties focused the court on the specific issue of whether the cross-action involved GA's advertising material or activities.  (*Id.* p.16, n. 3.)  In contrast, when Collins began evaluating coverage, the parties were initially focused on coverage under the policy's property-damage provision, before turning to the advertising-injury provision.  Under these circumstances, the Court of Appeal's decision does not support an inference that St. Paul acted consciously and deliberately to frustrate Plaintiffs' expectations.[8]  <u>See</u> <u>Wilson</u>, 42 Cal.4th at 726.

In sum, there is no evidence suggesting St. Paul's failure to draw the same inferences and conclusion as the Court of Appeal constituted bad faith.  To the contrary, the undisputed fact that Plaintiffs and the San Diego Superior Court also did not draw the same inferences and conclusion as the Court of Appeals supports the finding that St.

---

[7] The Court recognizes that the Court of Appeal's decision states that "many of the allegations are sufficient to create a reasonable inference that [GA] used some of the materials" for advertising.  (*Ct. App. Decision* p. 18.)  But the court then cites only two allegations supporting this inference (*id.* p. 18), and only four allegations supporting the inference that some of the materials Banks took were not for internal purposes and thus might have been used to attract the attention of others (*Id.* pp. 19–21).

[8] Plaintiffs' opposition discusses 13 facts they contend "support the conclusion that St. Paul acted unreasonably and without proper cause, resulting in a record upon which summary judgment cannot be granted[.]"  (*Pls' Opp'n* 3:9–10.)  The primary problem with Plaintiffs' argument is that the 13 facts provide no insight into whether St. Paul's belief that the cross-action did not involve Banks' theft of GA advertising material was unreasonable and made without proper cause.

Paul's failure to do so was reasonable.  Accordingly, St. Paul is entitled to summary adjudication of Plaintiffs' bad-faith claim.

### B.    Damage Claims

#### 1.    Bad faith, punitive damages and *Brandt* fees.

St. Paul argues Plaintiffs are not entitled to (1) bad-faith damages while the San Diego Superior Court's judgment was in effect, (2) punitive damages, and (3) attorneys' fees under Brandt v. Superior Court, 37 Cal. 3d 813 (1985).[9]  (*Defs' MSJ* 23:16–24:3, 25:15–26:13, 29:24–31:13.)  Because the Court has found the undisputed evidence does not support Plaintiffs' bad-faith claim, Plaintiffs cannot recover these damages.

#### 2.    Value of Banks' time.

St. Paul seeks summary adjudication on Plaintiffs' damage claim for the value of Banks' time spent helping his attorneys defend GA's cross action.  (*Def's P&A* 28:14–18.)  Plaintiffs contend these damages are recoverable as contract damages, and that "economic loss of this type may also be recovered in a tort action for breach of the duty of good faith and fair dealing."  (*Pls' Opp'n* 23:27–24:1.)

In Richards v. Sequoia Ins. Co., 195 Cal. App. 4th 431 (2011), the California Court of Appeal held that insureds, who were attorneys, were not entitled to recover as damages the value of their time spent defending a lawsuit.  Id. at 437–438.  According to the court, the "measure of damages for any breach of the insurer's contractual duty to defend are the 'costs and attorney's fees *expended* by the insured in defending the underlying action.'"  Id. at 437 (citing Emerald Bay Community Assn. v. Golden Eagle Ins. Corp., 130 Cal. App. 4th 1078, 1088–1089 (2005) (emphasis added)).  Relying on the California Supreme Court's decision in Trope v. Katz, 11 Cal. 4th 274 (1995), the court explained

---

[9] Under Brandt, an insured is entitled to recover attorneys' fees incurred to recover policy benefits where the insurer acted in bad faith.  Id. 37 Cal. 3d at 819.

14

that compensation for the insured's time spent self-representing in the underlying case did not constitute "the payment of 'attorney's fees expended by the insured.'" Id. at 437. Similarly, Banks' time spent helping his attorneys defend the cross-action does not constitute the payment of attorneys' fees. Accordingly, Banks is not entitled to recover the value of his time as contract damages.

With respect to Plaintiffs' contention that these damages are recoverable in tort, because St. Paul is entitled to summary adjudication of the bad-faith claim, Plaintiffs cannot recover the value of Banks' time under a tort theory.

### 3.     Loss of project funding.

St. Paul seeks summary adjudication on Plaintiffs' damage claim for loss of project funding on the basis that those damages were neither expected nor contemplated by either party when the policy was issued. (Def's P&A 29:4–14.) Plaintiffs oppose by arguing that whether the parties contemplated those damages depends on disputed issues of material fact. (Pls' Opp'n 22:23–23:8.)

In support of its motion, St. Paul relies on California Shoppers, Inc. v. Royal Globe Ins. Co., 175 Cal. App. 3d 1 (1985), which evaluated whether the insured, California Shoppers, was entitled to $3 million in damages for economic or business loss arising from its insurer's, Royal Globe's, breach of the duty to defend. Id. at 13, 58–59. California Shoppers asserted that because Royal Globe wrongfully refused to provide a defense, California Shoppers was prematurely "forced" to sell its assets for far less than it could have obtained had the sale been postponed. Id. at 61–62. In evaluating the claim, the court explained that "measuring the scope of recoverable damages in breach of contract cases must be restricted to such damages as were actually contemplated by or within the reasonable contemplation of the parties at the time they entered into the contract." Id. at 59. According to the court, "this measure, i.e., 'within the reasonable contemplation of the parties,' [citation omitted] is something much more limited in scope than that applied in tort cases where the fiction of foreseeability of the risk is one of many

15

factors woven into the complicated fabric which finally is labeled proximate cause in such cases." Id. Applying this rule, the court reasoned:

> To bring the award of $3 million of *consequential* damages resulting from the breach of the duty to defend within the measure of damages rule we have recited, it would be necessary to hold that the parties contemplated, *at the time the insurance was purchased*, that: (1) California Shoppers would violate the Unfair Practices Act; (2) a competitor would sue California Shoppers because of such violations; (3) Royal Globe would decline coverage and the tender of this defense; (4) because of $39,000 in attorney's fees incurred to defend the action, California Shoppers would be forced to sell the publishing enterprise for $1.5 million; and (5) *Royal Globe was aware of California Shoppers' long-range plan to sell the business at a later date after it had greatly appreciated in value.* [¶] The mere recital of the requisite combination of items the parties would have had to have in mind to justify this award of damages demonstrates that they could not have been awarded as consequential damages for breach of the contractual duty to defend.

Id. at 60 (emphasis in original; footnote omitted).

Plaintiffs attempt to distinguish California Shoppers by asserting there exists a disputed issue of material fact regarding whether the parties contemplated Plaintiffs' loss of project funding when the policy was purchased. (*Pls' Opp'n* 12:1–8.) But Plaintiffs have failed to provide evidence supporting their argument.

St. Paul has provided evidence that the parties did not contemplate Plaintiffs' loss of project funding when the policy was purchased. Specifically, St. Paul attached Banks' deposition testimony, wherein he admitted that before purchasing the policy, he did not deal with anyone at St. Paul, only an insurance broker, and that he never mentioned the National Science Foundation project, IARPA project or the related Army contract to the broker. (*Brooks Decl.*, Ex. 29 at 098.) Banks further confirmed that he "wouldn't know" if St. Paul had "any reason to know, when it issued you the policy, that you had contracts or grants with the National Science Foundation or IARPA or the U.S. Army." (*Id.*)

In contrast to St. Paul's evidence, Plaintiffs have provided no evidence remotely indicating the parties contemplated Plaintiffs' loss of project funding when the policy was

16

purchased. Because the only evidence before the Court indicates the parties did not contemplate Plaintiffs' loss of project funding, there are no disputed issues of fact and St. Paul is entitled to summary adjudication of this damage claim.

## V. DISCUSSION - PLAINTIFFS' MOTION

### A. The *Buss* Reimbursement Claim.

Plaintiffs seek summary adjudication of St. Paul's claim for reimbursement under Buss v Superior Court, 16 Cal. 4th 35 (1997). Plaintiffs contend St. Paul cannot prevail on its counterclaim for three reasons: (1) the claim is precluded by the Court of Appeal's decision that there was potential coverage under the advertising-injury-liability provision; (2) based on its discovery responses, St. Paul cannot offer evidence supporting its claim; and (3) the claim is precluded under California law because St. Paul did not provide a defense while the underlying case was ongoing. (*Pls' P&A* [Doc. 65-1]1:10–19.)

#### 1. The Court of Appeal's decision does not preclude reimbursement.

Plaintiffs argue the Court of Appeal's decision precludes St. Paul's reimbursement claim. According to Plaintiffs, the advertising-injury allegations that led the court to find a potential for coverage were all found in the first 125 paragraphs of GA's Amended Cross-Complaint. (*Pls' P&A* 7:20–24.) Because those paragraphs are expressly incorporated by reference into each and every one of the seven causes of action asserted against Plaintiffs, they contend there was necessarily a potential for coverage under each cause of action. (*Id.* 7:26–28.) The Court is not persuaded for two reasons.

First, Plaintiffs' argument is premised on the idea that the Court of Appeal determined that there was potential coverage under all of the causes of action in the Amended Cross-Complaint. But the Court is unaware of, and Plaintiffs have not pointed to, any language in the decision finding potential coverage under all of GA's claims. Instead, the decision simply found that "the facts alleged reveal *at least a possibility* that

17

a claim asserted by General Atomics against Tetravue and Banks *may* have been covered by the Policy…." (*Ct. App. Decision* pp. 22–23, emphasis in original.)

Second, as St. Paul points out, Plaintiffs do not cite any authority to support the proposition that GA's incorporation by reference of the factual allegations creates a potential for coverage under each cause of action. Indeed, Buss cautioned against too much reliance on the pleadings because "[t]he 'plasticity of modern pleading' [citation omitted] allows the transformation of claims that are at least potentially covered into claims that are not, and vice versa." Buss, 16 Cal. 4th at 49. For this additional reason, the Court is not persuaded by Plaintiffs' argument.

### 2. The claim is not precluded as a matter of law.

Plaintiffs argue that because St. Paul initially denied coverage and did not agree to pay Plaintiffs' defense fees until nearly 2 years after the trial ended, St. Paul failed to provide an immediate and entire defense as required by Buss, and therefore is not entitled to reimbursement. (*Pls' P&A* 12:10–27, 14:14–19.) The Court disagrees.

First, Plaintiffs have already raised this argument in opposing St. Paul's motion for leave to file the counterclaim for Buss reimbursement. In rejecting Plaintiffs' argument, this Court found that Plaintiffs' reliance on Buss was misplaced because the case did not attempt to decide the issue presented here: whether an insurer who wrongfully refuses to defend is precluded from reimbursement even if it ultimately pays the insured's defense costs. (*See Order Granting Motion for Leave to File Counterclaim* [Doc. 35]. 3:4–5.) Moreover, Plaintiff's reliance on Buss's statement that an insurer must defend immediately is misplaced because it was in the context of explaining why an insurer must pay all defense costs in a "mixed action," including those for which there is no potential for coverage.[10] See Buss 16 Cal. 4th at 48–49. Contrary to Plaintiffs' argument, Buss

---

[10] The Order Granting Motion for Leave to File Counterclaim also found that Plaintiffs' reliance on Buss was misplaced because the statement that an insurer must defend immediately was in the context of

did not establish an insurer's obligation to defend "immediately" as a condition for a reimbursement claim.

Second, Plaintiffs' argument that an insurer "is foreclosed from ever seeking reimbursement for costs of defense" when it fails to provide an immediate defense was rejected in <u>State v. Pacific Indemnity Co.</u>, 63 Cal. App. 4th 1535, 1550 (1998). Plaintiffs argue that <u>Pacific Indemnity</u> rejection of their argument is dicta. Evening assuming Plaintiffs are correct, the Court finds <u>Pacific Indemnity</u> persuasive for at least two reasons.

Plaintiffs have failed to cite any case contradicting <u>Pacific Indemnity</u>'s dicta. Nor is the Court aware of any case holding that an insurer is precluded from <u>Buss</u> reimbursement where it wrongfully refuses to defend, but ultimately pays all of the insured's defense costs. At most, the California cases Plaintiffs cite, as well as <u>Pacific Indemnity</u>, establish that in a mixed case, an insurer who wrongfully refuses to defend is not entitled to reimbursement until after it pays all of the insured's defense costs.

Additionally, precluding an insurer from seeking reimbursement would undermine the goal that all the parties receive the benefit of the bargain. Under <u>Pacific Indemnity</u>'s approach, where a duty to defend is owed, the insured must first receive the benefit of the bargain (i.e., payment of defense expenses) before the insurer is entitled to seek and obtain its benefit of the bargain (i.e., reimbursement for claims where there was no potential coverage). Under this approach, both parties receive the benefit of the bargain. In contrast, under Plaintiffs' theory, only the insured receives the benefit, as well as the windfall of having the insurer pay defense costs for uncovered claims. Absent bad faith, Plaintiffs have not cited authority or provided any rational basis for their position that the insured should receive a windfall, while the insurer is denied the benefit of the bargain.

---

explaining when the duty to defend arises. (*See Order Granting Motion for Leave to File Counterclaim* [Doc. 35] 3:2–4.)

### 3. St. Paul's discovery responses.

Plaintiffs also argue that St. Paul cannot prevail on its reimbursement claim because it cannot meet its burden of producing evidence to establish that certain defense costs are attributable solely to an uncovered claim. According to Plaintiffs, during discovery Defendants were "asked to identify all defense costs it paid and which it claims are not attributable solely to claims for which there was not even a potential for coverage, on an item by item basis." (*Pls' P&A* 9:18–23.) Rather than allocate defense costs on an item-by-item basis, Defendants asserted that it was entitled to reimbursement for all defense costs because "none of the GA claims had a potential for coverage." (*Id.* 9:24–27.) Defendants' position, however, is foreclosed by the Court of Appeal's finding that a potential for coverage existed under at least one of the causes of action. (*Id.* 9:3–15.) Accordingly, because Defendants did not allocate defense costs on an item-by-item basis, Plaintiffs contend they cannot now provide evidence to defeat summary judgment. (*Id.* 9:23–10:6.)

As an initial matter, Plaintiffs are correct that the Court of Appeal's decision constitutes collateral estoppel regarding whether a potential for coverage exists under at least one of the causes of action in GA's Amended Cross-Complaint. (*See Ct. App. Decision* pp. 22–23.) Therefore, any theory by St. Paul that is premised on the ability to establish none of the causes of action gave rise to a potential for coverage lacks merit.

Nevertheless, the problem with Plaintiffs' argument is that the central premise–that St. Paul's discovery response did not identify specific defense costs attributable to a non-covered claim–is not supported by the evidence. Although St. Paul's discovery response asserted "that all [GA's] cross-claims against [Plaintiffs] in the underlying action were not potentially covered…", St. Paul then identified specific items for which they are seeking reimbursement. (*Sarneky Decl.* Ex. 8 at 149–153.) For example, St. Paul asserted that none of the costs associated with the depositions of Paul Banks, Gregory Leonard, Murray Road, Alan Spero, Richard Abrams, Timothy Bertch, Michael Perry, Robin Snider and Thomas Baur were attributable to potentially covered claims. (*Id.* 150.)

Similarly, St. Paul asserted that specific motions were also not related to potentially covered claims. (*Id.* 151–152.) Plaintiffs' argument is, therefore, not supported by the record because St. Paul has identified specific costs that it may argue at trial are not attributable to a claim for which there was potential coverage.[11]

## VI.  CONCLUSION & ORDER

For the reasons set forth above, the Court **GRANTS** Plaintiffs' and Defendant's motions to file documents under seal [Docs. 66, 73], **DENIES** Plaintiffs' summary-judgment motion [Doc. 65] and **GRANTS IN PART** and **DENIES IN PART** Defendants' summary-judgment motion [Doc. 70].[12]

**IT IS SO ORDERED.**

Dated:  March 6, 2018

_____
Hon. Thomas J. Whelan
United States District Judge

---

[11] Whether St. Paul is limited to seeking reimbursement for only those items specifically identified in response to the interrogatory is beyond the scope of this order.

[12] St. Paul also seeks summary adjudication on two damage claims that Plaintiffs did not identify in their initial Rule 26(a) disclosure. (*Def's P&A* 26:14–17.)  Alternatively, St. Paul has filed a motion in limine to exclude those damages. (*See Def's Mt. in Limine* [Doc. 69].)  The Court will resolve the issue by ruling on the motion in limine at the appropriate time.